**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. _____**

**BLACKSTONE LABS LLC,**
     **Petitioner,**

**v.**

**UNITED STATES OF AMERICA;**
**UNITED STATES FOOD AND**
**DRUG ADMINISTRATION; and**
**SCOTT GOTTLIEB, solely in his**
**official capacity as Commissioner of**
**the Food and Drug Administration,**
     **Respondents.**
_____/

**PETITION BY BLACKSTONE LABS LLC FOR RETURN OF SEIZED**
**PROPERTY PURSUANT TO RULE 41(G) OF THE FEDERAL RULES OF**
**CRIMINAL PROCEDURE**

Blackstone Labs, LLC ("Blackstone"), pursuant to Rule 41(g) of the Federal

Rules of Criminal Procedure, seeks the return of property and currency seized by the

United States Food and Drug Administration in Palm Beach County, Florida on or

about February 17, 2017, pursuant to a Search and Seizure Warrant issued by U.S.

Magistrate Judge William Matthewman. The continued deprivation of Blackstone's

property without the initiation of any further government action is illegal,

unconstitutional, and unwarranted. This court should issue an order directing the

prompt return of all seized property.

## I.     INTRODUCTION.

On or about February 17, 2017, in Boca Raton, Florida, the United States executed a Search and Seizure Warrant at the premises of Blackstone Labs, LLC. The Search and Seizure Warrant with inventory will be filed under seal. The law enforcement raid was coordinated by the U.S. Food and Drug Administration through its Office of Criminal Investigations, based upon a search warrant application supervised and obtained by the U.S. Department of Justice. The agents seized more than $1 million in nutritional supplement products, computerized documents and information, many pages of company business documents, and $223,430.40 from the company bank account. Appended as Attachment A is a copy of a Cashier's Check representing the government's seizure of funds from Blackstone's bank account.

The government seizure effectively hindered and crippled Blackstone's successful dietary supplement business. Blackstone has endeavored to continue its business operations despite the law enforcement seizure. But now, after the passage of nearly eighteen (18) months since the seizure, the government's refusal to return the property and funds despite Blackstone's request is causing irreparable harm. All the nutritional supplement products seized are perishable and have a maximum shelf life of two years, upon which expiration the inventory will be worthless.

This motion concerns the seizure and retention of Blackstone's commercial

products that are neither contraband nor an integral part of the government investigation, including but not limited to these described products:

- Anesthetized
- Anogenin
- Brutal 4ce
- Chosen 1
- Cobra 6 Extreme
- Cobra 6 Extreme Powder Kiwi Strawberry
- Cobra 6 Extreme Powder Watermelon
- Dust Black Lemonade
- Dust Blue Sky
- Dust Cotton Candy
- Dust Red Ice
- Dust Watermelon
- Dust Extreme Pineapple
- Dust Extreme Sour Gummy
- Eradicate
- Euphoria
- Gear Support
- Gear Support Raspberry Lemonade
- Growth
- Growth Pineapple
- PCTV

The value of these commercial products has further diminished over their time in government custody due to what is believed to be the government's failure to properly store the products per specifications in a climate-controlled facility. If the commercial grade products have been exposed to the elements or have not been properly stored for any significant period of time, the damage to the property and its diminution in value is likely permanent, thus depriving Blackstone of the value of its property.

The government has not put forth evidence identifying any basis to believe that subject products contain controlled substances or are misbranded. Nor has the government provide a linkage of the funds taken from Blackstone's bank account to any illicit activity. Yet, the government continues to deny Blackstone possession of its property, including money. Because the government has no reasonable basis for the continued retention of the property, the products and money should be immediately returned to Blackstone pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure.

## II.    GROUNDS FOR RETURN OF SEIZED PROPERTY.

Rule 41(g) provides that "a person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." The rule "authorizes anyone aggrieved by a deprivation of property to seek its return." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010) (en banc). When, as here, the property was seized pursuant to an ongoing investigation, the movants must show: (1) they are lawfully entitled to the seized property; (2) the property is not contraband; and (3) the government has no need to use the property as evidence. *United States v. Shalash*, No. Civ. A. 05-56-KSF, 2005 WL 1593937, at *1 (E.D. Ky. 2005) (citing *Ferreira v. United States*, 354 F. Supp. 2d 406 (S.D.N.Y. 2005)).

When no criminal proceedings are pending, as is the situation here when an

indictment has not been filed, a Rule 41(g) motion is treated as a civil action in equity. *See United States v. Dean*, 80 F.3d 1535, 1542 n.6 (11th Cir. 2005) ("Federal courts have developed the doctrine of 'equitable' or 'anomalous' jurisdiction to enable them to take jurisdiction over property in order to adjudicate 'actions for the return of unlawfully seized property even though no indictment has been returned and no criminal prosecution is yet in existence.'") (citation omitted); s*ee also United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005) (a Rule 41(g) motion "is a motion in equity, in which courts will determine all the equitable considerations in order to make a fair and just decision"); *United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989) ("Rule 41(e), Fed. R. Crim. P., is 'a crystallization of a principle of equity jurisdiction.'") (citation omitted); *In re Southeastern Equipment Co. Search Warrant*, 746 F. Supp. 1563, 1572 (S.D. Ga. 1990) ("A motion under 41(e) has always been treated as one invoking the equity jurisdiction of the Court. The Eleventh Circuit in particular has assumed jurisdiction over such motions in the form of requests under Rule 41(e) or simply through the Court's own inherent jurisdiction.").

The doctrine of equitable jurisdiction is based on federal courts' "well established supervisory authority over officers of the court." *In re $67,470*, 901 F.2d 1540, 1544 (11th Cir. 1990). The doctrine enables district courts to exercise jurisdiction over seized property prior to indictment, and the Eleventh Circuit has

emphasized that "[t]he decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint. Such jurisdiction, therefore, is only appropriate in exceptional cases where equity demands intervention." *Id*. at 1544; *see also Hunsucker v. Phinney*, 497 F.2d 29, 33 (5th Cir. 1974) ("But even if the District Court's power over its officers provides a theoretical basis for jurisdiction in this case, it does not automatically follow that this unique power should be exercised wherever it exists. Rather such jurisdiction should be exercised with 'caution and restraint,' and 'subject to equitable principles.'") (citations omitted); *In re Southeastern Equipment Co.*, 746 F. Supp. at 1572 ("Equitable jurisdiction is deemed to be 'extraordinary' and, thus, should not be exercised in every situation as to make such a jurisdiction ordinary. This is especially so at the pre-indictment stage, where it is necessary to consider what interruption, if any, such an exercise would play on any ongoing investigations and proceedings."). "In other words, [equitable] jurisdiction is appropriate only when the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice." *United States v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1990).

Importantly, the Eleventh Circuit has directed that courts be guided by the following factors in determining whether a manifest injustice requiring the exercise of jurisdiction exists:

> (1) whether the government agents seized the property in callous disregard for the constitutional rights of the petitioner;

(2) whether the petitioner has an individual interest in and need for the material he seeks to have returned;

(3) whether the petitioner would be irreparably injured by denial of the return of the property; and

(4) whether the petitioner has an adequate remedy at law.

*United States v. Quezada*, 439 Fed. Appx. 824, 827 (11th Cir. 2011) (quoting *Matter of Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1545 (11th Cir. 1990)). *See Bennett v. United States*, 12-61499-CIV, 2013 WL 3821625, at *14 (S.D. Fla. July 23, 2013) (applying the four-factor test to a Rule 41(g) motion for return of property).

That manifest injustice is present here. The government has not identified or described the storage conditions for the property, leaving Blackstone with a reasonable concern that the property is stored in sub-optimal conditions in callous disregard of Blackstone's Fourth Amendment interests in the seized property. Further, as discussed in Section III, the products seized were taken pursuant to an overbroad and facially invalid warrant. Even more, Blackstone's individual interest in and need for these products as well as the irreparable injury caused by the government's failure to return the nutritional supplements that are not part of its investigation is undeniable. Blackstone is still an operational business, but suffering because of the continued deprivation of its products and money. And with each passing day, no matter what the government eventually does with the property, the seized inventory is lessening in value and rapidly becoming near-worthless to

Blackstone. Finally, there is no other remedy at law for Blackstone. Once expired, the products are useless.

The government's failure to institute proceedings within a reasonable period of time to justify the seizure and retention of property provides an adequate ground for ordering the return of Blackstone's property. *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004); *In re Documents and Other Possessions at Metropolitan Correctional Center*, 228 F.R.D. 621, *623 (N.D. Ill. 2005). A property is subject to "deprivation of property" when the government holds seized property beyond the time it needs the property for investigative or prosecutorial purposes. *United States v. Beach*, 113 F.3d 188, 189-190 (11th Cir. 1997).

The government's protracted retention of non-targeted nutritional supplements for the unreasonable period of time of eighteen months merely bolsters the necessity of an order requiring the return of the inventory and money. *See In re: Search of the Office of Ken Tylman*, 245 F.3d 978, 980 (7th Cir. 2001); *In re: Search of 2847 East Higgins Road, Elk Grove Village, Illinois*, 390 F.3d 964, 965 (7th Cir. 2004) ($12 million in cash seized from warehouse should have been returned as soon as it became apparent the money had no evidentiary value and was not the fruit of a crime). "The government will not be permitted to seize private property and then simply retain the property without any demonstration that the property is somehow necessary to the investigation, even if the seizure was executed pursuant to a valid

search warrant." *Interstate Cigar Co. v. United States*, 928 F.2d 221, 224 (7th Cir. 1991). "The person from whom the property is seized is presumed to have a right to its return, and the government must demonstrate that it has a legitimate reason to retain the property." *United States v. Potes Ramirez,* 260 F.3d 1310, 1314 (11th Cir. 2001); *United States v. Crenshaw*, 2004 WL 742100, *1 (N.D. Ill. 2004). To retain seized property, the government must provide a "legitimate reason" for the "continued possession of the seized property." *United States v. Price*, No. 10-60243–CR–ZLOCH, 2011 WL 2651802, at *1 (S.D. Fla. 2011). The standard is always one of reasonableness.

Courts uniformly find it unreasonable for the government to deprive an owner of property that is unrelated to the potential criminal activity to be charged and that otherwise has no evidentiary value. *See, e.g.*, *United States v. White*, No. 12-2833-MJ, 2013 WL 141147, at *3 (S.D. Fla. 2013) (ordering property return including a rare coin collection when property had no reasonable evidentiary value); *Shalash*, 2005 WL 1593937, at *3 (ordering return of items seized pursuant to search warrant that were "not related in any way to the allegations of criminal activity").

Here, the government has had continued and exclusive possession of Blackstone's commercial nutritional supplements for eighteen months. These products identified for return are not related to the government's investigation. In the intervening time since the seizure, the property has quickly approached its two-

year shelf life expiration date. Absent a demonstration of a valid reason for its continued deprivation of the Blackstone commercial goods and money needed to continue its business, the government should be ordered to return the property immediately "to the rightful owner." *Henderson v. United States*, __ U.S. __, 135 S. Ct. 1780, 1784 (2015).

## III. GOVERNMENT'S CONTINUED DEPRIVATION OF BLACKSTONE'S LAWFUL NUTRITIONAL SUPPLEMENTS IS UNWARRANTED.

The Blackstone products at issue in this motion are lawful dietary supplements. The government's authorization in the warrant to seize items "that constitute fruits, contraband, evidence and instrumentalities relating to violations of the Food, Drug, and Cosmetic Act (21 U.S.C. §§ 331(a), 331(d), 331(v) and 333(a))" provided no specifications as to how an agent should make that determination. In light of the fact that Blackstone distributes many dietary supplement products, the overbroad and unparticularized warrant permitted agents to seize the bulk of Blackstone's inventory, regardless of whether products had any relationship to the investigation. Because the identified legitimate products were taken pursuant to an overbroad and facially invalid warrant, the seizure was unlawful and the products must be returned. *See Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1173-74 (9th Cir. 2010) (en banc) (ordering return of property seized pursuant to unconstitutional search), *abrogated on other grounds*, *Hamer v. Neighborhood*

*Hous. Servs. Of Chi.*, __ U.S. __, 138 S. Ct. 13, 16-17 (2017).

Notwithstanding any legitimate reasons, if any, for the initial seizure, there is no reasonable basis for the continued retention of Blackstone's lawful dietary supplements that are not contraband.

Blackstone satisfies every element necessary to obtain return of its products and money under Rule 41(g).

## IV.   CONCLUSION.

The government's seizure and continued deprivation of Blackstone's lawful business property and money is causing irreparable injury to Blackstone. The amount of time the property has been in the government's possession is unreasonable and unfair. Blackstone has a pressing need for the property, without which its business interests are being adversely impacted every day. Without any adequate remedy at law – money damages after the fact or a delayed property return will come too late once the property has no value or Blackstone is forced out of business – the only available redress of Blackstone's grievance is through the equitable return of its property. Therefore, in order to prevent a manifest injustice, this court must order the government to return Blackstone's seized commercial property and bank account balance. Blackstone should be permitted to put its lawful dietary supplements that are not contraband to proper and legitimate business use.

Respectfully submitted,

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550
Miami, FL 33131-2154
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com